UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL NOEL, an individual,

Plaintiff, Case No.

v. Hon.

ELI LILLY AND COMPANY, an Indiana corporation, and EQUINITI TRUST COMPANY, LLC, a New York limited liability company,

Defendants.

---

BONELEX
Devin W. Bone (P78853)
*Counsel for Plaintiff*
321 ½ S. Main Street, Suite 201
Rochester, MI 48307
(248) 833-8333
dbone@bonelex.com

---

**COMPLAINT**

Plaintiff Carol Noel ("Carol"), by and through her attorneys, BoneLex, for her Complaint against Defendants Eli Lilly and Company ("ELC") and Equiniti Trust Company, LLC ("EQ," collectively "Defendants") states as follows:

**INTRODUCTION**

1. This is a complaint seeking declaratory relief and damages under theories of conversion and violations of Michigan's Uniform Commercial Code. Beginning in 1971 and continuing until 1986, Carol was gifted ELC common stock ("Stock") by her parents, Harry Jerome Noel and Louise Hanley Noel. Louise's father, William Andrew Hanley, was an early scientist and employee at ELC.

2. Those issuances were made via paper certificates, which were subsequently lost and replaced by Defendants in electronic form after several years of efforts by Carol and her family.

3. In receiving the electronic issuances, Carol quickly realized that ELC's four stock splits were not reflected in the issuances—meaning that she has title to only a fraction of the shares in which she has ownership.

4. Carol has attempted to navigate this issue for years, with no luck. The documents are clear. Defendants failed to properly address Carol's ownership issues.

5. Carol seeks confirmation of the true number of shares of Stock due to her, which she calculates as being no less than 11,896 shares, as opposed to the 554 shares documented by Defendants. She also seeks damages for Defendant's violation of Michigan's Uniform Commercial Code and conversion of Carol's shares.

**PARTIES, JURISDICTION, AND VENUE**

6. Carol is a resident of the State of Michigan, residing in Charlevoix County, Michigan, in the Western District.

7. Upon information and belief, ELC is an Indiana corporation that conducts business in the State of Michigan.

8. Upon information and belief, EQ is a New York limited liability company that conducts business in the State of Michigan.

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) as the damages sought exceed $75,000 in damages and each of the parties are domiciled in different states.

10. This Court has personal jurisdiction over the Defendants because they conduct business in the Western District of Michigan.

11. Venue is proper pursuant to 20 U.S.C. § 1391(b)(3).

**GENERAL ALLEGATIONS**

12. Beginning in or around January of 1971, Carol began receiving gifts of ELC stock from her grandfather, William Andrew Hanley, ELC's first professional engineer, who was hired in 1911.

13. The gifts were deposited into two accounts, one bearing the name Carol Noel Madrick, bearing the account number ending in ***996 (the "Madrick Account") and one bearing the name Carol Celeste Noel, bearing the account number ending in ***623 (the "Noel Account").

**The Noel Account**

14. On January 25, 1971, Carol received an issuance of 100 shares of Stock into the Noel Account bearing the certificate number DUPA013142.

15. On December 29, 1976, Carol received an issuance of 100 shares of Stock into the Noel Account bearing the certificate number DUPA028420.

16. On June 22, 1977, Carol received an issuance of 124 shares of Stock into the Noel Account bearing the certificate number DUPA012154.

17. The shares at issue related to these issuances total 324 shares of ELC Stock.

18. With one other deposit of 40 shares, the Noel Account totaled 364 shares in January of 1986. (January 15, 1986 Statement, **Exhibit A**).

19. On January 30, 1986, ELC effectuated a stock dividend where each holder of its Stock would receive an additional share of Stock (the "1986 Dividend").[1]

[1] ELC's dividend and stock split history is publicly available at https://investor.lilly.com/stock-information/dividends-splits. The 1986 Dividend issued one additional share for every share owned by a shareholder, effectively creating the same effect as a two-for-one stock split.

20. Noel Account statements after the 1986 Dividend do not reflect the issuance of additional shares. (March 3, 1986 Statement, **Exhibit B**).

21. On May 1, 1989, ELC effectuated a two-to-one stock split where each holder of its Stock would receive two shares for every share of Stock the holder owned (the "1989 Split").

22. Noel Account statements after the 1989 Split do not reflect the issuance of additional shares from either the 1986 Dividend or the 1989 Split. (January 2, 1995 Statement, **Exhibit C)**.

23. On December 21, 1995, ELC effectuated a second two-to-one stock split where each holder of its Stock would receive two shares for every share of Stock the holder owned (the "1995 Split").

24. Interestingly, the Noel Account statements from after the 1995 Split *do* reflect the split being effectuated, with the total shares being increased from 324 to 648. (December 29, 1995 Statement, **Exhibit D**). However, the following year, the account was again reduced to the original 324 shares of Stock. (October 13, 1997 Statement, **Exhibit E**).

25. On October 16, 1997, ELC effectuated a third two-to-one stock split where each holder of its Stock would receive two shares for every share of Stock the holder owned (the "1997 Split").

26. The 1986 Dividend, 1989 Split, 1995 Split, and 1997 Split are collectively referred to herein as the "Stock Splits."

27. Again, the Noel Account statements do not reflect the 1997 Split. (December 31, 1997 Statement, **Exhibit F**).

28. If the Stock Splits were accurately reflected in the Noel Account, Carol would be entitled to 5184 shares of Stock, valued at approximately $6,480,000.[2]

**The Madrick Account**

29. On March 4, 1986, Carol received an issuance of 193 shares of Stock into the Madrick Account bearing the certificate number DUPA065736.

30. On May 22, 1986, Carol received an issuance of 37 shares of Stock into the Madrick Account bearing the certificate number 69943.

31. The shares at issue related to these issuances total 230 shares of ELC Stock.

32. After ELC initiated the 1989 Split, the Madrick Account statements again do not reflect the issuance of additional shares. Documents from 1995 show a total share count of 230 despite Carol holding 230 shares in the Madrick Account prior to the 1989 Split (Exhibit C).

33. After ELC initiated the 1995 Split, the Madrick Account statements similarly reflect the effectuation of the split, with total shares being increased from 230 to 460. (Exhibit D).

34. As with the Noel Account, the Madrick Account's shares were reduced back to 230 in subsequent statements. (Exhibit E). The Madrick Account likewise does not show any effectuation of the 1997 Split. (Exhibit F).

35. If the Stock Splits were accurately reflected in the Madrick Account, Carol would be entitled to 1840 shares of Stock, valued at approximately $2,300,000.

**Other Inconsistencies**

36. Aside from these issues, Defendants' records show other issues where shares issued in the 1970s were not included in subsequent splits.

[2] Damage calculations are based on an ELC Stock price of $1,250 per share. Plaintiff reserves the right to amend that amount to current market rates.

37. For example, in the Madrick Account, account records prior to the 1986 Dividend demonstrate Carol owned 406 shares of Stock.

38. However, the records do not show that the 406 shares were subject to the 1986 Dividend or the 1989 Split, meaning that—despite the fact Carol deposited 406 shares of ELC Stock from the Madrick Account in 1994, she could have an interest in an additional 4,872 shares of Stock, valued at approximately $6,090,000, related directly to the shares she *should have received* as a dividend in 1986.

39. Defendants' records similarly increase and decrease the number of shares of Stock owned by Carol in both accounts, with no explanation. (Exhibit C & D).

**Carol's Attempts to Confirm Ownership**

40. Over the course of more than five years, Carol has attempted to confirm ownership of her ELC Stock.

41. In the early 2010s, Carol discovered that her original paper certificates memorializing the shares identified herein were missing, and began the process to receive confirmation of the issuances and replacement via electronic book entry.

42. That process took years, and eventually resulted with EQ confirming the issuances identified herein and replacing the certificates with book entries memorializing the issuances into the Noel Account and Madrick Account.

43. To that end, Carol received a letter confirming the number of shares issued to the Noel Account and Madrick Account but failing to address the failure of the Defendants to account for the Stock Splits. (EQ Letter, **Exhibit G**).

44. On October 8, 2025, ELC issued a letter to Carol stating that the transfer agent—EQ—was required to maintain records. ELC provided no additional information regarding the treatment of the Stock Splits.

45. It is undisputed that Carol received the shares identified herein. EQ has confirmed the certificate number and number of shares in each certificate. (Exhibit G).

46. What Defendants have failed to do is properly update Carol's records to reflect the Stock Splits, or provide any other meaningful explanation as to why those shares were not subject to the split.

47. The present action seeks to, finally, resolve this issue.

## COUNT I

## DECLARATORY JUDGMENT

**(Against All Defendants)**

48. Carol incorporates the foregoing as though fully restated herein.

49. For over five decades, Carol has held title to shares of ELC Stock.

50. During that time, ELC has issued four Stock Splits, none of which are reflected in Carol's account.

51. The inconsistencies in the Defendants records demonstrate that, at times, Carol's stock *was* reflected in a split, and then subsequently was reduced to the original amounts.

52. A controversy exists regarding Carol's ownership in ELC and the number of Shares to which she in entitled.

53. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, Carol seeks declaratory relief in the form of a Court Order establishing the number of shares to which Carol is entitled, along with the dividends she did not receive as a result of not holding the Stock at issue.

WHEREFORE, Plaintiff Carol Noel seeks a Declaratory Judgment stating that she is entitled to ownership of at least 11,896 shares of ELC Stock based on her ownership of the identified certificates, as well as the shares of Stock identified in Defendants' records that were in Carol's name but not subject to the Stock Splits as recited here.

**COUNT II**

**VIOLATION OF MCL 440.8401 AND MCL 440.8407**

**(Against All Defendants)**

***Pled in the Alternative to Count I***

54. Carol incorporates the foregoing as though fully restated herein.

55. Under Michigan's Uniform Commercial Code, ELC has a duty to transfer its stock when "the transfer is in fact rightful." MCL 440.8401(1)(g).

56. EQ, as ELC's transfer agent, has the same obligation as codified in MCL 440.8407.

57. Carol has repeatedly requested that Defendants transfer the stock to which she is entitled or otherwise explain how she is not entitled to the stock that would have been issued to her as a result of the Stock Splits.

58. Defendants have refused to take the actions required.

59. If Defendants fail to transfer the security, they are liable to Carol "for loss resulting from unreasonable delay or registration or failure or refusal to register the transfer." MCL 440.8401(2).

60. Here, Defendants' failure to properly transfer to Carol 11,896 shares of ELC Stock amounts to damages of approximately $14,870,000, exclusive of the dividends not paid to Carol over the last fifty years.

WHEREFORE, Plaintiff Carol Noel respectfully requests this Honorable Court enter judgment in Carol's favor, and against Defendants, totaling at least $14,870,000, the total amount of which will be proven at trial on this matter.

**COUNT III**

**CONVERSION**

**(Against All Defendants)**

***Pled in the Alternative to Count I***

61. Carol incorporates the foregoing as though fully restated herein.

62. Where a corporation fails to timely issue a certificate of stock to a person entitled thereto, Courts have recognized a common law claim of conversion. 12A Am Jr 2d., Corporations, Sec. 407, p. 281.

63. A claim for conversion exists in common law and statute in Michigan. Where a person is damaged as a result of another person or entity's exercise of wrongful control, embezzlement, or conversion, the damaged party may seek treble damages and the recovery of attorney fees.

64. Here, Defendants have wrongfully exerted control and possession over the shares of ELC Stock to which Carol is entitled.

65. As a result, Carol has suffered damages of at least $14,870,000.

[Continued on Following Page]

WHEREFORE, Plaintiff Carol Noel respectfully requests this Honorable Court enter judgment in Carol's favor, and against Defendants, establishing the rights associated with Carol's ownership of ELC Stock, or alternatively, awarding damages of at least $14,870,000, the total amount of which will be proven at trial on this matter, along with an award of treble damages and attorney fees.

Respectfully Submitted,

BONELEX, Counsel for Plaintiff

By: */s/ Devin W. Bone*

Devin W. Bone (P78853)
321 ½ S. Main Street, Suite 201
Rochester, MI 48307
(248) 833-8333
dbone@bonelex.com

Dated: September 10, 2026